# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-1408V**
**Filed: August 17, 2026**

| | |
|---|---|
| ANNAMMA VARUGHESE,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Horner |

*Kirk Tripp Otto, Siri & Glimstad, LLP, Richmond, VA, for petitioner.*
*Mallori Browne Openchowski, U.S. Department of Justice, Washington, DC, for respondent.*

## ORDER DENYING MOTION FOR RECONSIDERATION[1]

On September 30, 2022, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffered transverse myelitis ("TM") caused by the influenza ("flu") vaccination that she received on September 21, 2021. (ECF No. 1.) On July 23, 2026, I issued a decision concluding that petitioner is not entitled to compensation. (ECF No. 56.) On August 13, 2026, petitioner filed a motion for reconsideration of that decision. (ECF No. 57.)

For the reasons discussed below, petitioner's motion is **DENIED**. Because I am denying the motion and sustaining the decision at issue, it is not necessary to direct respondent to file a response to the motion. Vaccine Rule 10(e)(2)-(3).

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] All references to "§ 300aa" below refer to the relevant section of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

## I. Legal Standard for Reconsideration

Vaccine Rule 10(e), which governs motions for reconsideration, provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ." Vaccine Rule 10(e)(1). Generally, "[a] court may grant such a motion when the movant shows '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007) (quoting *Amber Resources Co. v. United States*, 78 Fed. Cl. 508, 514 (2007)). Granting such relief requires "a showing of extraordinary circumstances." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 826 (2005). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). It has previously been noted, however, that there is little guidance interpreting Vaccine Rule 10(e)(3) beyond the conclusion that it is within the special master's discretion to decide what constitutes the "interest of justice" in a given case. *See Krakow v. Sec'y of Health & Human Servs*., No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of motion to dismiss case for failure to prosecute).

Nonetheless, "a motion for reconsideration should not be used to gain a second opportunity to argue what was already decided." *Chuisano v. Sec'y of Health & Human Servs*., No. 07-452V, 2013 WL 6234660, at *20 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (citing *Fillmore Equip. of Holland, Inc. v. United States*, 105 Fed. Cl. 1, 9 (2012)). A party seeking reconsideration "must support the motion by a showing of extraordinary circumstances which justify relief." *Fru–Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999). The motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008) (quoting *Fru–Con Constr. Corp*., 44 Fed. Cl. at 300).

## II. Petitioner's Argument

The primary focus of petitioner's motion is a specific study by Baxter et al. and the effect it should have on the question of whether the flu vaccine can cause TM. (ECF No. 57, pp. 3-11 (discussing Roger Baxter et al., *Acute Demyelinating Events Following Vaccines: A Case-Centered Analysis*, 63 CLINICAL INFECTIOUS DISEASES 1456 (2016) (Ex. A, Tab 2) (*see also* Ex. C, Tab 3)).) However, acknowledging that the decision at issue found that she had not satisfied any of the three *Althen* prongs, petitioner offers arguments as to each such element of her prima facie case. (*Id*. at 12-15.)

Asserting that the issues she raises implicate the interests of justice, petitioner argues that the Baxter study is unique in this program given that it is often cited by respondent yet, by petitioner's estimation, incorrect. (Ex. 57, pp. 3-4.) Specifically, petitioner argues that the program must confront the fact that the author's conclusions are contradicted by the study's data. (*Id.*) Although the study taken at face value would

undermine petitioner's case, she argues that it should have been considered in the *Althen* prong one analysis and that it should have been considered as evidence favoring petitioner's case in light of her counsel's interpretation of the supplemental study data. (*Id*. at 5-9.) This is potentially significant, because the decision at issue rejected her expert's proposed mechanism of causation; however, that rejection would not necessarily be dispositive if the capacity of the flu vaccine to cause TM was otherwise evidenced. (*Id*. at 10-11.) She argues that, if nothing else, this analysis should be undertaken for the benefit of future cases. (*Id*. at 10.)

Regarding *Althen* prong three, although the decision concluded that a 24-hour post-vaccination onset of TM did not support a causal inference, petitioner argues that the record evidence does not actually support the onset of *neurologic* symptoms beginning within that timeframe. (Ex. 57, pp. 12-13.) Instead, she urges that she initially only experienced fevers and chills and then later developed neurologic symptoms consistent with TM gradually. (*Id*. at 13-14.) And, finally, because the analysis of *Althen* prong two accounted for petitioner's failure to meet her burden under either prongs one or three, she argues that the analysis under *Althen* prong two must be reconsidered as a result of the arguments advanced in her motion. (*Id.* at 12.)

## III. Discussion

Having considered petitioner's motion, I find that she has not presented circumstances that meet the standard for reconsideration. At best, her arguments present an attempt merely to relitigate what has already been decided. At worst, they are frivolous if not disingenuous.

Regardless of any other issue presented in her motion, petitioner does not appear to contest that the finding that her TM began 24-hours post-vaccination is fatal to her case under *Althen* prong three. (ECF No. 57, p. 15.) However, she now belatedly argues that her initial emergency department record incorrectly understood her to be reporting neurologic symptoms within that timeframe whereas she was actually reporting only fever and chills initially with neurologic symptoms developing later. (*Id*. at 12-14.) This is not credible for several reasons. First, petitioner's own declaration, though it includes the progression of symptoms described in the motion for reconsideration, nonetheless clearly states that her symptoms of TM, including back pain and leg numbness, began on September 22, 2021,[3] the day after vaccination. (Ex. 1, p. 1.) Second, petitioner's own response to respondent's motion for a ruling on the written record patently takes the position that onset of petitioner's TM occurred the day after vaccination. (ECF No. 47, p. 1.) Third, the initial emergency department record is not the only record bearing on this question. The decision explained that petitioner consistently reported a 24-hour post-vaccination onset throughout her treatment history. (ECF No. 56, pp. 4-5 (citing Ex. 4, pp. 159, 356, 683; Ex. 5, pp. 1-2).) And, fourth, the emergency department record cannot be parsed the way petitioner wishes. Petitioner focuses on the statement within the history that she suffered chest pain as of "this

[3] In her declaration, petitioner erroneously identifies the day after the flu vaccination at issue as September 22, 2022. (Ex. 1, p. 1.)

morning" (ECF No. 57, p. 13); however, the medical record is otherwise clear in documenting the duration of her neurologic symptoms as being two days. *See below*:

**History**

Patient presents with:
Chest Pain: sharp chest pain this morning radiates to back, nausea, bilateral leg weakness and numbness

29

Patient presents to emergency department complaining of chest pain and numbness of the legs and abdomen and bilateral leg weakness–

History provided by: **Patient**
Language interpreter used: **No**
Illness
Severity: **Moderate**
Onset quality: **Gradual**
Duration: **2 days**
Timing: **Constant**
Progression: **Worsening**
Chronicity: **New**
Associated symptoms: **chest pain** and **nausea**
Associated symptoms: **no abdominal pain**, **no shortness of breath**, **no vomiting** and **no wheezing**

(Ex. 4, p. 683 (red box added).) Nor can the record reasonably be interpreted as mistaking the initial onset of petitioner's condition based on fever and chills, because those symptoms were not reported as part of this particular history. (*Id.*)

Petitioner also seeks to find significance in the idea that her symptoms of TM occurred gradually. (ECF No. 57, pp. 12-14.) However, this is not informative of onset. Both petitioner's declaration (Ex. 1, p. 1) and the above-depicted medical history (Ex. 4, p. 683) identify petitioner's symptoms as either gradual or progressing while also explicitly placing the initial onset of those symptoms on the day after vaccination. Moreover, this is an expected course for TM. The diagnostic criteria for TM indicate that the progression from initial symptom onset to nadir of the condition should occur within between 4 hours and 21 days. (Transverse Myelitis Consortium Working Group, *Proposed Diagnostic Criteria and Nosology of Acute Transverse Myelitis*, 59 NEUROLOGY 499 (2002) (Ex. E, Tab 3, p. 2 tbl. 1).) The fact that petitioner's condition followed the expected course of TM in no way implies that the onset of her condition was anything other than what is preponderantly evidenced by the record as a whole.

Turning to petitioner's *Althen* prong one arguments, they are mostly inapposite. Petitioner argues at length that the Baxter study is flawed or incorrect and that respondent's repeated reliance on it is problematic. However, the Baxter study was not identified within the decision as significant evidence weighing against petitioner's theory of causation in this case. (ECF No. 56, pp. 15-19.) Accordingly, it is not necessary to reconsider the decision to account for petitioner's complaints about the study. Petitioner argues that this would nonetheless be beneficial for future cases. However, given that it

was not necessary to reach the issue to resolve this case, that essentially requests an advisory opinion. And, in any event, special master decisions are not binding, and petitioner otherwise cites several examples where special masters have engaged with the particulars of this study. (ECF No. 57, p. 4.) Reconsideration of the instant decision to address the subject is therefore not necessary and, in any event, would not serve as a substitute for raising the issue anew in any subsequent case in which the study comes into in evidence. *See, e.g.*, Vaccine Rule 8(f).

Petitioner does also argue that counsel's reinterpretation of the Baxter data should be considered as evidence favoring petitioner's *Althen* prong one showing. However, this is also unpersuasive. First, it must be stressed that the contentions at issue are counsel's alone. Petitioner's expert, Dr. Steinman, asserted that he is qualified to interpret epidemiologic evidence. (Ex. 8, p. 2.) However, he not only never affirmatively relied on the Baxter study as evidence supporting his opinion, he also did not adopt counsel's understanding of the data in rebuttal to respondent's expert's citation to the study. (Ex. 51, pp. 1-2, Ex. 52, p. 1.) In fact, he directly quoted the Baxter study's conclusion without challenging it. (Ex. 51, pp. 1-2.) And, given that counsel is explicit in contending that his interpretation of the Baxter data as favoring a causal relationship runs counter to the conclusion of the study authors (ECF No. 57, p. 3), the record does not establish that counsel's interpretation of the data comports with sound and reliable scientific understanding. The only evidence petitioner has supplied is a supplemental table of the Baxter data (Ex. 58); however, the fact of the supplementary data is acknowledged in the Baxter paper itself. (*E.g.*, Ex. A, Tab 2, p. 6.) No medical or scientific opinion is in evidence to suggest that the figure identified by petitioner within the supplemental data is significant enough to cast doubt on the author's conclusions. In particular, it is not readily clear to the undersigned without the input of a qualified expert that the supplemental data meaningfully supports petitioner's claim given the P-value assigned to the specific finding highlighted by petitioner. (Ex. 58, p. 1.) Counsel characterizes the study authors as taking "deliberate" steps to "conceal" the data (ECF No. 57, p. 5), but his arguments do not substantiate that assertion even if they could potentially be accepted as having some bearing on the weight of the evidence.

Petitioner argues that Dr. Steinman's silence on the issue should be excused because petitioner did not become aware of the supplemental data until the briefing stage of the case. (ECF No. 57, p. 6.) However, this is not a reasonable argument. The Baxter study is a decade old and, as petitioner stresses, it has been repeatedly presented in this program. Additionally, the existence of the supplemental data is explicitly disclosed in the paper and, as noted above, Dr. Steinman has asserted that he has the capacity to review and critique epidemiologic studies. If Dr. Steinman wanted to challenge the study based on the supplemental data, he obviously had the ability to do so at the time he prepared his reports. But Dr. Steinman instead explicitly opined that the Baxter study is *irrelevant to his opinion* because his opinion was specific to later formulations of the flu vaccine that were not examined by Baxter. (Ex. 51, pp. 1-2.)

Accordingly, counsel's interpretation of the Baxter data cannot be harmonized with Dr. Steinman's opinion, and it also does not stand on its own as significant evidence favoring petitioner's burden under *Althen* prong one. And, in any event, petitioner's argument on this point was already considered and the decision explicitly remarked that it had been found unpersuasive. (ECF No. 56, p. 20 n.25.)[4]

Finally, because I have found that petitioner did not raise any issue warranting reconsideration relative to either *Althen* prong one or three, it necessarily follows that there is no need to revisit *Althen* prong two. Petitioner's argument that *Althen* prong two should be reconsidered was predicated on the success of her arguments relative to the other *Althen* prongs.

## IV. Conclusion

In light of all of the above, petitioner's motion for reconsideration is **DENIED**. Additionally, petitioner's counsel is hereby put on notice that I preliminarily conclude that the hours spent pursuing the instant motion were not reasonably undertaken given the specific arguments advanced.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

[4] In the motion for reconsideration, petitioner takes issue with the fact that her counsel's interpretation of the Baxter et al. study was addressed under the heading of *Althen* prong three rather than being directly included in the analysis of *Althen* prong one. (ECF No. 57, p. 5.) However, this is immaterial given that the decision simply documented that counsel's effort to interpret the study data had been flatly rejected as unpersuasive in itself.